## State of Connecticut *v.* William J. Milardo
### (14311)

Peters, C. J., Callahan, Borden, Berdon and Norcott, Js.

398

Argued September 22, 1992—decision released January 12, 1993

*Thomas W. Ude, Jr.,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Bernadette Conway,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. This appeal concerns several issues arising out of the criminal trial of the defendant, William Milardo. The state charged the defendant in a two part information. The first part charged the defendant with the crimes of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-70 and 53a-49 (a) (2),[1] kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[2] unlawful restraint in the first degree in violation of General Statutes § 53a-95,[3] and two counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[4] The second part of the information

---

[1] "[General Statutes (Rev. to 1991)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a persons [sic] under thirteen years of age.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

General Statutes § 53a-49 (a) (2) provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes (Rev. to 1991) § 53a-92 (a) (2) (A) provides: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] "[General Statutes (Rev. to 1991)] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

[4] "General Statutes § 53a-61 (a) (1) provides: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person."

charged the defendant with being a persistent serious felony offender pursuant to General Statutes § 53a-40 (b).[5] A jury returned verdicts of guilty of attempted sexual assault in the first degree, unlawful restraint in the first degree and unlawful restraint in the second degree in violation of General Statutes § 53a-96 as a lesser included offense of kidnapping. The jury then convicted the defendant of being a persistent serious felony offender. Following the defendant's convictions, the court sentenced him to a term of imprisonment of twenty years. He appeals to this court pursuant to General Statutes § 51-199 (b) (3).[6] We affirm the judgment of the trial court.

---

[5] General Statutes (Rev. to 1991) § 53a-40 (b) and (g) provide: "(b) A persistent serious felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) and the prior conviction was for a crime other than those enumerated in subsection (a) of this section. . . .

"(g) When any person has been found to be a persistent serious felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony."

[6] General Statutes § 51-199 (b) (3) provides: "(b) The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, *including any persistent offender status,* for which the maximum sentence which may be imposed exceeds twenty years." (Emphasis added.) Although none of the underlying convictions of the defendant would have qualified his case for appeal directly to this court, his conviction of being a persistent serious felony offender subjected his conviction of attempted sexual assault in the first degree, a class B felony, to the aggravated sentence "for the next more serious degree of felony"; General Statutes (Rev. to 1991) § 53a-40 (g); namely, class A felony. Thus, his appeal was properly filed in this court, rather than in the Appellate Court.

The jury could have reasonably found the following facts. On May 4, 1990, at approximately 12 p.m., the victim, a student at Wesleyan University in Middletown, was in her bedroom located on the second floor of the two-story house that the defendant, the victim and three others rented. The victim was awake, lying in bed under the covers. At that time, the defendant opened her bedroom door, and, while standing in her doorway, inquired as to the whereabouts of one of their other housemates. The defendant then walked toward the victim, whispering, "Shuh, shuh, shuh," as he approached her. He then got onto the victim's bed, pulled her covers off, lay on top of her, and said, "Kiss me." The victim struggled and the defendant pinned her arms down and placed his hand over her mouth to prevent her from screaming. The defendant also put his hands under the victim's shirt, grabbed her breasts, and put his hand down her pants and underneath her underpants.

During the encounter another young woman, a friend of the victim, who also lived in the house, returned home. Upon entering, she heard muffled screams. Startled, she went to the victim's bedroom, opened the door, and saw the defendant lying on top of victim. Seeing the victim's friend, the defendant climbed off the victim and moved to the edge of the bed. Alarmed, the victim's friend yelled, "What the hell is going on here?" The defendant responded, "Nothing, nothing." The victim's friend then went to her own bedroom and attempted to call campus security.

The defendant entered the bedroom of the victim's friend and attacked her, grabbing her neck and holding her in a headlock. The victim heard her friend cry out and went to her aid. The victim struggled with the defendant, trying to free the other woman. The two women then screamed and advised the defendant that

if he did not leave they would call the police. Eventually, the defendant left the house.

On appeal, the defendant claims that: (1) there was insufficient evidence from which a jury could reasonably have concluded that the defendant attempted to commit sexual assault in the first degree; (2) the trial court improperly instructed the jury on his alibi defense; (3) the trial court failed to instruct the jury properly that in order to convict the defendant of attempted sexual assault in the first degree it must find proven beyond a reasonable doubt that the defendant intended to compel sexual intercourse; (4) the trial court improperly instructed the jury on the charge of sexual assault in the first degree by reciting the entire statutory definition of sexual intercourse; (5) the trial court improperly denied the defendant's request to instruct the jury that the attempted third degree sexual assault was a lesser included offense of attempted first degree sexual assault; and (6) the trial court's instruction regarding the persistent serious felony statute denied the plaintiff due process of law.

I

The defendant first claims that there was insufficient evidence from which a jury could have concluded beyond a reasonable doubt that he acted with the intent to commit the crime of attempted sexual assault in the first degree. We disagree.

When reviewing a claim of insufficiency of evidence, our task is twofold: "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's

guilt beyond a reasonable doubt." *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

Every element of the crime charged must be established by proof beyond a reasonable doubt. The basic facts underlying the elements of the crime charged, however, may be reasonably inferred by the factfinder. *State* v. *Castonguay,* 218 Conn. 486, 507, 590 A.2d 901 (1991). "If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." *State* v. *Pinnock,* 220 Conn. 765, 771, 601 A.2d 521 (1992); *State* v. *Grant,* 219 Conn. 596, 604–605, 594 A.2d 459 (1991).

In order to convict the defendant of attempted sexual assault in the first degree in violation of §§ 53a-70 and 53a-49 (a) (2), the state must have proven beyond a reasonable doubt that "the defendant acted with the specific intent to commit sexual assault in the first degree which in turn included the intent to have *sexual intercourse*"; (emphasis added) *State* v. *Green,* 194 Conn. 258, 273, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); and that the defendant took a "substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2).

Intent may be inferred from the conduct of the accused. *State* v. *Carpenter,* 214 Conn. 77, 82, 570 A.2d 203 (1990); *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381 (1972). The intent of the actor is an issue to be determined by the trier of fact. *State* v. *Carpenter,*

supra, 83. Likewise, what constitutes a "substantial step" in any given case is a matter of degree and a "question of fact" for the jury. *State* v. *Green,* supra, 275. The substantial step must be "at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted." Id., 272; *State* v. *Mazzadra,* 141 Conn. 731, 736, 109 A.2d 873 (1954).

The jury heard evidence that the defendant, believing that he was alone in the house with the victim, entered the victim's bedroom without invitation and, despite her resistance, lay on top of her, muffled her screams, kissed her, placed his hands under her shirt and pants, and forcibly touched her breasts and genital area. The jury could reasonably have found from this evidence that the defendant intended to compel the victim to engage in sexual intercourse, had he not been interrupted by the victim's friend soon after the assault had begun. The jury also could reasonably have found from the evidence of his actions that the defendant had taken a substantial step toward the commission of the crime of sexual assault in the first degree, and that the substantial step evinced the defendant's specific intent to commit that crime.

The defendant also argues that there was insufficient evidence to prove that he had the requisite intent to commit sexual assault in the first degree because the evidence of intent to compel sexual intercourse cannot be distinguished from intent to compel sexual contact, an element of the crime of sexual assault in the third degree in violation of General Statutes § 53a-72a (a).[7] We disagree.

---

[7] General Statutes (Rev. to 1991) § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of

We have held that even if a jury could infer from a given set of facts that a defendant might have intended to commit a crime other than that charged, the jury is not precluded from reasonably finding that he intended to commit the crime with which he was charged. *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984). That holding has application here. After the defendant had pinned down the victim, muffled her screams, and began forcibly touching her breasts and genital area, the defendant's assault was cut short only when the victim's friend entered the bedroom and confronted him. The jury could reasonably have inferred that the defendant intended his actions to culminate in compelled sexual intercourse rather than the sexual contact that had already occurred before the victim's friend interrupted his attack.

Because not every person who commits sexual assault has intercourse as their ultimate objective, the legislature in the penal code has distinguished between sexual assault with sexual intercourse as its goal and sexual assault with sexual contact as its goal. Even though the jury could have found that the defendant had intended to compel only sexual contact, it could also reasonably have inferred that the defendant intended to compel the victim to engage in sexual intercourse. *State* v. *Morrill,* supra. We conclude that there was sufficient evidence for the jury to have found proven beyond a reasonable doubt that the defendant had the requisite intent to convict him of attempted sexual assault in the first degree.

## II

The defendant next claims that the trial court's instruction on alibi: (1) improperly shifted the burden

---

use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person . . . ."

of proof to the defendant to raise a reasonable doubt as to his presence at the scene of the crime; and (2) effectively permitted the jury to convict him if it found that he had merely been present at the scene of the crime, thereby violating his state and federal constitutional rights to due process. We do not agree.

At trial, the defendant presented several witnesses who testified that at the time of the alleged sexual assault on the victim he had been at Bud's Cafe in Portland. The defendant requested the trial court to charge the jury that "[i]n the final analysis, the state, in addition to its ordinary burden of proving the essential elements of its case beyond a reasonable doubt, has as well the burden of disproving the alibi evidence beyond a reasonable doubt."

The trial court refused to charge as the defendant had requested. Just prior to instructing the jury on the substantive offenses with which the defendant was charged, however, the court instructed the jury concerning the defendant's alibi. Contrary to the defendant's first claim that the trial court's instruction shifted the burden of proof to the defendant to raise a reasonable doubt as to his presence, the trial court's initial alibi instruction explicitly charged the jury that the burden of proof remained with the state: "I want to make this clear to you, the burden never shifts from the State, the burden which rests upon the State to prove the accused guilty of the charge beyond a reasonable doubt involves proof that he was present at the scene of the crime when it was committed. The accused does not have to prove his claim that he was elsewhere, it's the burden of the State to prove that he was at the scene of the crime."

After the trial court instructed the jury regarding the substantive offenses, the defendant objected to the trial court's charge to the jury regarding his alibi. In

response, the trial court reinstructed the jury that the burden to prove that the defendant had been present at the scene of the crime never shifted from the state, and that, if the alibi witnesses created a reasonable doubt concerning the defendant's presence, then the jury must find the defendant not guilty.

Under our law of alibi, "where an alibi is asserted and relied upon as a defense, the accused is entitled to have the jury instructed that the evidence offered by him upon that subject is to be considered by them in connection with all the rest, in determining whether he was present, and if a reasonable doubt upon that point exists, it is their duty to acquit." (Internal quotation marks omitted.) *State* v. *McKnight*, 191 Conn. 564, 584, 469 A.2d 397 (1983); *State* v. *Butler*, 207 Conn. 619, 631, 543 A.2d 270 (1988). The trial court's instruction accurately expressed the law. Contrary to the defendant's contention, the trial court was not required to instruct the jury explicitly that the state must disprove his alibi defense beyond a reasonable doubt.

Even if, as the defendant contends, the trial court was required to instruct the jury, in accordance with his request, that the state had to disprove his alibi beyond a reasonable doubt, the record reveals that the court did in fact do so. In the course of its charge the court stated: "If his defense raises a reasonable doubt you must find him not guilty. If the State's evidence proves all the elements including his presence beyond a reasonable doubt then necessarily his defense will have been disproved so it is correct for me to say to you that the *State's evidence must disprove his defense* beyond a reasonable doubt." (Emphasis added.) Consequently, the trial court essentially incorporated the defendant's request to charge in its instruction.

The defendant next argues that the trial court violated his state and federal constitutional rights to due process of law because the court's alibi instruction had the effect of permitting the jury to convict him if it found that he was merely present at the scene of the crime.[8] The defendant further maintains that, although he did not articulate a constitutional claim when he took exception to the trial court's charge, his claim is entitled to appellate review.

A defendant can prevail on an unpreserved claim only if "*all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9]

The defendant offers as the source for the alleged constitutional violation the following language from the court's charge: "If the evidence that was produced by the defendant about his presence raises a reasonable doubt, raises a reasonable doubt in your mind as to his presence at the scene of the crime, you must find him not guilty. If the evidence proves beyond a reasonable doubt that he was at number 5 Frazier Avenue you must find him guilty." Although this sentence might give rise to a constitutional violation, if read in isola-

[8] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty or property, without due process of law."

[9] Because the defendant fails to brief or analyze independently any state constitutional protections, we limit our review to the relevant federal constitutional claim. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

tion from the rest of the instructions on alibi, it fails under the third prong of *Golding* when read in the context of those instructions.

We must, however, view the challenged language in the context of the entire alibi instruction "to determine whether it is reasonably possible that the instruction misled the jury." *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991); *State* v. *Lytell,* 206 Conn. 657, 664, 539 A.2d 133 (1988). We will not sever one part of the instruction and analyze it separately from the whole. *State* v. *Johnson,* 185 Conn. 163, 168, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983).

Our analysis of the entire charge leads us to the conclusion that the jury was not misled by the court's instruction. The challenged portion of the trial court's charge appears in one of seven paragraphs covering two transcript pages devoted to the court's initial alibi instruction. As mentioned above, the other portions of the initial alibi instruction accurately explained the nature of alibi and the state's burden. Moreover, after the court charged the jury on the substantive offenses, it again devoted seven paragraphs covering two pages of transcript to reinstructing the jury concerning the defendant's alibi. In the subsequent alibi instruction, the last heard by the jury, the challenged portion of the language initially used does not appear. *State* v. *Gonzalez,* 222 Conn. 718, 726, 609 A.2d 1003 (1992). In the context of the court's entire instruction, therefore, no reasonable juror could have been misled by the challenged portion of the instruction into convicting the defendant of the crimes charged on proof of his mere presence at the scene of the crime. Therefore, no constitutional violation clearly exists, and the defendant's challenge to the trial court's alibi instruction fails under the third prong of the *Golding* test.

## III

We next address the defendant's claim that the trial court violated his federal constitutional rights to due process of law by failing to instruct the jury that, in order to convict him of attempted sexual assault in the first degree, it must find proven beyond a reasonable doubt that the defendant intended to compel the victim to engage in sexual intercourse.[10] Specifically, the defendant asserts that by not specifying in its charge that the requisite intent for attempted sexual assault in the first degree is intent to compel sexual intercourse, the trial court misled the jury to believe that it could convict the defendant without proof beyond a reasonable doubt that the defendant intended to compel the victim to have sexual intercourse. We are not persuaded.

"It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)." (Internal quotation marks omitted.) *State* v. *Anderson,* 212 Conn. 31, 37, 561 A.2d 897 (1989). A jury instruction is constitutionally adequate if it provides the jurors with "a clear understanding of the elements of the crime charged, and . . . afford[s] proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Usry,* 205 Conn. 298, 316, 533 A.2d 212 (1987); *State* v. *Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985). When examining the propriety of the trial court's instruction, we must examine the instruction as a whole. *State* v. *Ortiz,* supra, 667. This

---

[10] Because, here again, the defendant fails to brief or analyze independently any state constitutional protections, we limit our review to the relevant federal constitutional claim. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

analysis may involve considering the trial court's instructions on a given issue together with other instructions on a related topic in order to determine whether the jury could have interpreted the charge in an impermissible manner. *State* v. *Vasquez,* 182 Conn. 242, 251, 438 A.2d 424 (1980).

In explaining the inchoate offense of attempted sexual assault in the first degree, the trial court first instructed the jury concerning the definition of completed sexual assault in the first degree. The court stated that in order to prove an accused guilty of completed sexual assault in the first degree, the state must prove that the accused used force and actually compelled the act of sexual intercourse. Next, the trial court read the statutory meaning of sexual intercourse, and defined force. Finally, after reading the relevant portions of the attempt statute, the trial court instructed the jury concerning the charged crime of attempted sexual assault. The trial court explained that "the first element that we would have to prove was that the defendant had the specific intent to commit the crime of sexual assault in the first degree."

By charging as it did, the trial court clearly delineated the state's burden of proof on every element of the crime of attempted sexual assault in the first degree, including intent to compel sexual intercourse. Thus, despite the fact that the trial court never directly incorporated the talismanic words "compel sexual intercourse" by themselves into its definition of attempted sexual assault, an examination of the totality of the trial court's instructions concerning the inchoate offense reveals that the jurors were adequately informed that in order to convict the defendant of attempted sexual assault in the first degree the state must prove beyond a reasonable doubt that he intended to compel sexual intercourse. In the context of the entire charge, no reasonable juror could have been misled concerning the

proper elements of attempted sexual assault in the first degree. *State* v. *Ortiz,* supra.

## IV

The defendant next claims that the trial court improperly instructed the jury on the charge of attempted sexual assault in the first degree by reading the entire statutory definition of sexual intercourse when there was insufficient evidence that he had attempted to commit all of the statutorily listed ways of accomplishing intercourse. General Statutes § 53a-65 (2).[11] Further, he alleges that the trial court's reference to the entire statutory definition of sexual intercourse violated his constitutional rights to notice of the crimes with which he was charged and to conduct an adequate cross-examination.[12] We disagree.

During the trial court's charge on attempted sexual assault in the first degree, the court referred to the elements of the crime of completed sexual assault in the first degree. The trial court's definition of completed sexual assault in the first degree included the definition of sexual intercourse found in General Statutes (Rev. to 1991) § 53a-65 (2) which provides that

[11] General Statutes (Rev. to 1991) § 53a-65 (2) provides:" 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other."

[12] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him . . . ."

Because, once again, the defendant fails to brief or analyze independently the applicable state constitutional protections, we limit our review to the counterpart federal constitutional claim. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

" '[s]exual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex."

It strains reason to suggest that reference to the statutory definition of sexual intercourse in the court's instruction created a burden upon the state to provide sufficient evidence to prove the defendant's intent to commit each of the acts listed in § 53a-65 (2). The crime of which the defendant was convicted was the inchoate crime of attempt. The state did not have to prove that a specific act of sexual intercourse had occurred because, by definition, no such completed act is part of an attempt. Rather, the state had only to prove that the defendant took a substantial step in a course of conduct that was planned to culminate in intentionally compelling another person to engage in sexual intercourse. Thus, the charge on the element of intent necessary for attempted sexual assault in the first degree need not be more specific than instructing, as the trial court did here, that the state must prove that the defendant intended to compel sexual intercourse, regardless of which of the listed acts in the statutory definition might ultimately have been performed had not the defendant's attack on the victim been interrupted.

The defendant's arguments are based on his claim that the state, after first apparently proceeding on a theory that he had attempted only one of the listed acts of sexual intercourse to the exclusion of the others, then effectively switched its theory when the court charged the jury on the entire statutory definition of sexual intercourse and consequently expanded the scope of the substantive offense.[13] The defendant asserts that this

[13] The defendant claims that the trial court was required constitutionally to specify in its instruction which of the acts listed in the statutory definition of sexual intercourse the defendant had intended to perform. Just as it has been a permissible practice, however, that an information, particularly a long form information, need not specify which act, among others

alleged error denied him notice of the crimes with which he was charged and his right to cross-examine the witnesses. We disagree.

Contrary to the defendant's claims, he was clearly afforded notice of the offense with which he was charged and his defense suffered no prejudice because of the trial court's reading of the entire definition of sexual intercourse. Where the defendant can demonstrate neither unfair surprise nor prejudice, he cannot claim an infringement of his constitutional right to fair notice of the crimes with which he is charged or the denial of his right to conduct an adequate cross-examination. *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986); see also *State* v. *Scognamiglio,* 202 Conn. 18, 23, 519 A.2d 607 (1987). The instruction on attempted sexual assault in the first degree conformed to and was consistent with both the information and the theory of the prosecution. The first count of the long form information did not specify which of the listed acts of sexual intercourse the defendant was alleged to have intended. The information merely stated that the defendant "did attempt to compel another person [the victim] to engage in sexual intercourse by use of force against such person; all in violation of Sections 53a-70 and 53a-49 (a) (2) of the Connecticut General Statutes." The fact that the information was in long

listed, was the means by which a crime was committed; *Andersen* v. *United States,* 170 U.S. 481, 500, 18 S. Ct. 689, 42 L. Ed. 1116 (1898); the defendant also is not constitutionally entitled to a charge on the precise manner in which the act was committed. *Schad* v. *Arizona,* 501 U.S. , 111 S. Ct. 2491, 2497, 115 L. Ed. 2d 555 (1991). The United States Supreme Court held in *Schad* that if a single crime can be committed in various ways, the court need not instruct the jury upon the specific method of committing the crime. The same principle holds true with respect to elements of a crime that involve mental states, such as, in this case, the intent to commit sexual intercourse; a court need not specify in its charge to the jury which of the alternative means of satisfying a mens rea element of a particular crime the defendant achieved. Id.

form and cited to a provision in the General Statutes pertaining generically to compelled sexual intercourse afforded the defendant constitutionally adequate notice of the possibility that the trial court could ultimately incorporate the entire statutory definition of sexual intercourse in its charge to the jury.

The jury was never informed that the state was proceeding on the single theory that the defendant intended to compel vaginal intercourse to the exclusion of the other forms of sexual intercourse listed in § 53a-65 (2). The state's charged theory of the crime was unitary; ultimately, after clarifying its position with the trial court, it requested that the court charge the complete statutory definition of sexual intercourse. In addition, the testimony of the state's witnesses tended only to prove that the defendant intended to compel "sexual intercourse," not that the defendant intended to compel any one of the particular acts of sexual intercourse listed in § 53a-65 (2).

Finally, the defendant's entire defense was predicated on his alibi that he was not present at the scene of the crime when it occurred. There is nothing in the record to suggest that the defendant would have altered his defense had the defendant believed that the state was proceeding on a theory that the defendant intended one of the particular acts of sexual intercourse to the exclusion of the others listed in § 53a-65 (2). *State* v. *Scognamiglio,* supra.

On the basis of these facts, the defendant's constitutional claims fail because he was not subjected to unfair surprise and he was not prejudiced in the preparation or implementation of his defense by the trial court's instruction on attempted sexual assault in the first degree.

## V

The defendant next claims that the trial court improperly denied his request to charge the jury that attempted sexual assault in the third degree is a lesser included offense of attempted sexual assault in the first degree. We do not agree.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we set forth the test for whether a defendant is entitled to a charge on a lesser included offense. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

At trial, the defendant requested an instruction on attempted sexual assault in the third degree. He now argues that his proposed charge satisfied the *Whistnant* test and should have been given by the court because it is impossible to have attempted to compel sexual intercourse, an element of attempted sexual assault in the first degree, without also having attempted to achieve sexual contact, an element of attempted sexual assault in the third degree.

The crime of sexual assault in the first degree requires that the state prove beyond a reasonable doubt that (1) "the defendant acted with the specific intent to com-

mit sexual assault in the first degree which in turn included the intent to have *sexual intercourse*"; (emphasis added) *State* v. *Green,* supra, 273; and (2) the defendant took a "substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2).

Attempted sexual assault in the third degree, on the other hand, includes an additional element not found in the crime of attempted sexual assault in the first degree, namely, proof that the defendant intended to compel sexual contact for the purpose of either the sexual gratification of the actor or the humiliation or degradation of the victim. See General Statutes § 53a-65 (3).

Because attempted sexual assault in the third degree requires proof of this specific purpose for which sexual contact is made, and attempted sexual assault in the first degree does not require such proof, the two crimes are separate offenses. Consequently, it is possible to commit attempted sexual assault in the first degree without first committing attempted sexual assault in the third degree. Therefore, the defendant's claim that the trial court improperly denied the defendant's request to instruct the jury on attempted sexual assault in the third degree fails under the second prong of the *Whistnant* test. The defendant was not entitled to an instruction on attempted sexual assault in the third degree as a lesser included offense.

## VI

The defendant finally claims that the trial court improperly charged the jury on the persistent serious felony offender statute by instructing it that, to convict him of being a persistent serious felony offender, the state did not have to prove that the defendant had actually served one year in prison. In addition, the defendant claims that the trial court effectively directed

a verdict of guilty on the persistent serious felony offender count. We disagree with both claims.

During trial on the second part of the information, an assistant clerk of the court testified that the defendant had been convicted of sexual assault in the first degree in 1987, and had been sentenced to a term of imprisonment of seven years, execution suspended after three years. A sheriff testified that on July 19, 1987, he had transported the defendant to prison to begin serving that sentence. Finally, the defendant's probation officer testified that on August 22, 1988, the defendant had told her that he had been released from prison on August 19, 1988.

The trial court gave the following charge: "One of the things that the state must prove beyond a reasonable doubt was that Mr. Milardo was in prison under an imposed term of more than one year for the prior crime. The state must prove beyond a reasonable doubt that the defendant William Milardo was convicted and in prison under an imposed term of more than one year. That means that the state must prove that the defendant received a sentence imposing a period of imprisonment in excess of one year, that means that he had to have served 365 days or more in jail. They do not have to prove, however, any specific length of time that the defendant was actually incarcerated.

"If you find the defendant was sentenced to a period of imprisonment greater than one year then the state has met its burden as to that element and you will recall the testimony of the clerk as to the sentence on the prior crime."

The defendant argues that the trial court was required to charge that the state must prove beyond a reasonable doubt that the defendant had actually served one year or more in prison. General Statutes (Rev. to 1991) § 53a-40 (b) provides in part that "[a]

persistent serious felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death . . . for a crime. . . ."

"Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 195, 567 A.2d 1156 (1989). Although ambiguities in criminal statutes are ordinarily to be resolved in favor of the defendant, such "statutes are not to be read more broadly than their language plainly requires." *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109 (1986).

Under the plain reading of § 53a-40 (b), actual service in excess of one year is not an element of the offense. The clear meaning of the words "convicted of and imprisoned under an imposed term of more than one year" requires that the state prove only that the defendant served some amount of time in confinement under a sentence having a term that exceeded one year. Although it is necessary that the persistent serious felony offender actually have been imprisoned, the crucial element of the statute is that the imposed term exceeded one year. If the legislature had intended that one year need actually be served in prison, it could have stated this requirement in § 53a-40 (b).

The defendant also claims that the trial court essentially directed a verdict of guilty on the charge that he was a persistent serious felony offender. We are not persuaded. Following the instructions on the elements required for conviction of the defendant on the persistent serious felony offender count, the trial court stated to the jury: "You can retire to the jury room for your

deliberations. You can select a foreperson and you can begin your deliberations when you receive the information. You can render, well, there's *only one verdict and it must be unanimous.* When you [have] reached a verdict inform the sheriff that you have reached a verdict but don't tell him what your verdict is. You'll be asked to return to the courtroom to announce your verdict, the foreperson will announce the verdict and the rest will be asked whether you agree." (Emphasis added.)

If viewed in isolation, the trial court's statement that there was "only one verdict" appears inappropriate. In the context of the entire charge, however, the defendant's claim is almost frivolous. The court's statement that there was "only one verdict" obviously referred to the fact that, at this second stage of the trial, where the defendant was charged with only one offense, an offense that entailed no lesser included offenses, there could be but a single verdict, guilty or not guilty. The court's reference to "only one verdict" could not possibly have led the jury to believe that there were not two alternatives to the one verdict ultimately to be returned. In the context of the charge as a whole, the trial court accurately conveyed to the jury that alternative verdicts were to be considered, namely, guilty or not guilty, although for this one offense ultimately there would be "only one verdict."

The judgment is affirmed.

In this opinion PETERS, C. J., BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. On the basis of the inadequate instructions given, I am convinced that the jury could not have known that the state was required to prove that the defendant intended to compel the victim to engage in sexual intercourse in order to find that

he was guilty of attempted sexual assault in the first degree. The trial court never gave this instruction.

I agree with the majority of this court that we must examine the trial court's instruction as a whole in determining whether the jury charge is sufficient. *State* v. *Avila,* 223 Conn. 595, 607, 613 A.2d 731 (1992). But the majority ignores a corollary to this rule—that the jury is presumed to follow the court's instructions on the law. *State* v. *DellaCamera,* 166 Conn. 557, 567, 353 A.2d 750 (1974).

Not only do I believe that the instructions recited by this court in its majority opinion were insufficient, but that portion of the instructions that is missing from the majority's analysis compels the conclusion that the jury could not have known that intent to compel sexual intercourse was an essential element of the crime.

The majority fails to acknowledge that the trial court first instructed the jury that the state did not have the burden of proving all the elements of sexual assault in the first degree in order to prove attempted sexual assault in the first degree. The court charged as follows: "It's not the State's burden to prove all the elements I talk about here. It's their burden to prove that the defendant's intent was to commit this act, not that he actually did." The trial court then explained the elements of sexual assault in the first degree: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by use of force against such other person." Thereafter, the court defined sexual intercourse. When it came to explaining the elements of attempted sexual assault in the first degree, however, the court stated: "The first element which the State must prove beyond a reasonable doubt to sustain a conviction of this defendant on this charge of attempted sexual assault in the first degree, the first element that we

would have to prove was that the defendant had the specific intent to commit the crime of sexual assault in the first degree in any of the ways that I have defined them." The court never specifically instructed the jury that in order to convict the defendant of attempted sexual assault in the first degree it was required to find beyond a reasonable doubt that he intended to compel sexual *intercourse.*

To have the specific intent merely to commit the crime of sexual assault in the first degree is insufficient. In *State* v. *Green,* 194 Conn. 258, 273, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985), we held that "[t]he state must prove that the defendant acted with the specific intent to commit sexual assault in the first degree which in turn included the intent to have sexual intercourse. 'It is not enough [just] to show that the defendant intended to do some unspecified criminal act.' LaFave & Scott, Criminal Law § 59, p. 429."[1]

On the basis of the instructions given by the trial court, the jury, even if composed of six lawyers, could not have known that the intent to engage in sexual intercourse was an essential element of the crime charged. "Charging a jury is not a matter of abracadabra. No part of the conduct of a criminal trial lays a heavier task upon the presiding judge. The charge is that part of the whole trial which probably exercises the weightiest influence upon jurors. It should guide

---

[1] Indeed, Justice Borden, in his criminal jury charges, points this out when he recommends the following instructions: "In order for you to convict on this offense of attempted sexual assault in the first degree, then, you must be satisfied: (1) that the defendant acted with the intent to compel the victim, by force, to engage in *sexual intercourse,* and . . . (2) he intentionally did anything which, under the circumstances as he believed them to be, was an act constituting a substantial step in a course of conduct which he planned to end in his compelling her to engage in *sexual intercourse.*" (Emphasis added.) 5 Connecticut Practice, D. Borden & L. Orland, Connecticut Criminal Jury Instructions (1986) § 10.3, pp. 281–82.

their understanding after jurors have been subjected to confusion and deflection from the relevant by the stiff partisanship of counsel." *Andres* v. *United States,* 333 U.S. 740, 765–66, 68 S. Ct. 880, 92 L. Ed. 1055 (1948) (Frankfurter, J., concurring.). The jury must receive clear and concise instructions as to what the state must prove in order to find the defendant guilty of the crime charged. No such instructions were given in this case.

The instructions in this case were especially important because the facts that pertained to the crime of attempted sexual assault in the first degree could have been found to satisfy, just as easily, nothing more than sexual contact.[2] As stated in the majority opinion, only the following facts were supported by direct evidence: "He . . . got onto the victim's bed, pulled her covers off, lay on top of her, and said, 'Kiss me.' The victim struggled and the defendant pinned her arms down and placed his hand over her mouth to prevent her from screaming. The defendant also put his hands under the victim's shirt, grabbed her breasts, and put his hand down her pants and underneath her underpants." As these facts illustrate, the line between attempted sexual assault in the first degree and sexual contact is very fine. It is difficult to determine when sexual contact becomes an attempted sexual assault. As Justice Holmes noted in *Commonwealth* v. *Peaslee,* 177 Mass. 267, 272, 59 N.E. 55 (1901): "[P]reparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the

---

[2] General Statutes (Rev. to 1991) § 53a-72a provides in relevant part: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . ." General Statutes (Rev. to 1991) § 53a-65 (3) provides in pertinent part: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ."

intent to complete it renders the crime so probable that the act will be a [crime] although there is still a locus penitentiae in the need of a further exertion of the will to complete the crime."

Anything short of a clear and concise instruction that requires the jury to focus in on the crucial element of the crime charged—that is, intent to compel sexual intercourse—deprives the accused of his constitutional right of due process.[3] The jury's ability to distinguish between attempted sexual assault in the first degree and sexual assault in the third degree depended entirely on the trial court's instruction. For all we know, the jury may have thought that sexual contact, instead of the intent to have sexual intercourse, was sufficient to convict the defendant of attempted first degree sexual assault.

I also disagree with the majority's decision that the trial court properly instructed the jury on the charge of attempted sexual assault in the first degree when it read the entire statutory definition of sexual intercourse. The court instructed the jury as follows: "I would also tell you that sexual intercourse means vaginal intercourse, anal intercourse, fellatio or cunnilingus between parties regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse, fellatio and does not require the emission of semen. Penetration, however, is not required for the commission of cunnilingus. Penetration may be committed by an object placed by the actor into the genital or anal opening of the victim's body . . . ."

---

[3] "A jury instruction is constitutionally adequate if it provides the jurors with a 'clear understanding of the elements of the crime charged,' and affords 'them proper guidance for their determination of whether those elements were present.' . . . An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8 of the Connecticut constitution." (Citations omitted.) *State* v. *Avila,* 223 Conn. 595, 603, 613 A.2d 731 (1992).

There was absolutely no evidence, nor could any reasonable inference be drawn, to support a jury instruction on methods of attempted intercourse other than vaginal intercourse. On more than one occasion, this court has stated that "[w]here a person may have been convicted under more than one statutory alternative, the judgment cannot be sustained unless the evidence was sufficient to establish that the defendant was guilty under each statutory provision upon which the jury could have relied. *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983)." *State* v. *Thompson,* 197 Conn. 67, 74, 495 A.2d 1054 (1985); see also *State* v. *Silveira,* 198 Conn. 454, 458–59, 503 A.2d 599 (1986). The basis for this rule is the well established principle, stated at the beginning of this dissent, that jurors are presumed to follow the instructions given by the judge; *State* v. *Barber,* 173 Conn. 153, 156, 376 A.2d 1108 (1977); and that an instruction on a method of committing a crime that is not supported by the evidence implies that there is a factual issue for the jury to resolve in regard to the method. *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987).

Accordingly, although I agree that there was sufficient evidence upon which the jury could infer that the defendant was guilty of attempted sexual assault in the first degree by attempting to have vaginal intercourse with the victim, albeit very thin, I would reverse and order a new trial for the following reasons: (1) the trial court failed to instruct the jury that the intent to compel sexual intercourse was an essential element of the crime charged; and (2) there was no evidence to support an instruction on methods of sexual intercourse other than vaginal intercourse.

I respectfully dissent.