[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for attempted sexual assault first degree, in violation of General Statutes §§ 53a-49 and 53a-70, and unlawful restraint first degree, in violation of General Statutes § 53a-95, as a persistent felony offender, under General Statutes § 53a-40 (d), for which judgment the petitioner received a total, effective sentence of twenty-one years incarceration. The petitioner contends his confinement is unlawful because his trial, and appellate counsel rendered ineffective assistance at his criminal trial and direct appeal, respectively. The judgment of conviction was affirmed on appeal, State v. Milardo, 224 Conn. 397
(1993).
Specifically, the petitioner asserts that his trial counsel, Attorney Everett Peters, rendered ineffective assistance at his criminal trial by failing to testify as a defense witness regarding a previous inconsistent statement by a witness; by failing to move for a mistrial after the trial judge, O'Keefe, J., yelled at an alibi witness; and by failing to move for a mistrial when the trial-judge conducted the criminal trial without impartiality. The CT Page 12397 petitioner asserts his appellate counsel, Attorney Thomas W. Ude, Jr., rendered ineffective assistance by failing to raise the trial court's lack of impartiality as an issue on appeal and by failing to raise violations of the state constitution regarding jury instructions pertaining to alibi and criminal attempt.
At the commencement of the habeas hearing, the habeas court addressed an additional claim set forth in the first count of the petitioner's third, amended petition. The court dismissed this count because the respondent raised the issue of procedural default in its reply to the petition, which action invokes the "cause and prejudice" standard announced in Wainwright v. Sykes, 433 U.S. 72
(1977), and adopted under state habeas law in Johnson v.Commissioner, 218 Conn. 403, 409 (1991). The petitioner failed to offer any cause for such default except for the alleged omissions of counsel which form the bases of the other counts of the petition. Consequently, the first count of the petition was dismissed for lack of good cause under Wainwright v. Sykes, supra.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims, Johnson v.Commissioner, 218 Conn. 403 (1991), p. 425. Under this standard, the petitioner must prove both that his trial attorney's performance was deficient, and that this deficient performance prejudiced his defense, Id. p. 424. If it is easier to dispose of the claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletierv. Warden, 32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of theStrickland test is dispositive, the court proceeds to address that issue directly.
In order to satisfy the prejudice prong of the Strickland
test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
I CT Page 12398
Assuming, arguendo, that Peters' representation of the petitioner at the criminal trial was deficient for the reasons alleged in the amended petition, the court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that he was prejudiced thereby.
The petitioner first alleges that Peters should have testified at the petitioner's criminal trial as to an interview he conducted with a defense witness, Charles "Mutt" Ethridge, in order to prove that Ethridge had given a previous statement inconsistent with his trial testimony. Ethridge was a purported alibi witness who testified at the criminal trial that he arrived at a particular restaurant between 1:30 and 2:00 P.M. on the day of the alleged assault and saw the petitioner there. Ethridge also testified that he entered the restaurant after the restaurant finished serving lunch (Petitioner's Exhibit 1, March 13, 1991, pp. 118 through 127).
Peters testified at the habeas hearing that, during a pretrial interview, Ethridge had indicated to Peters that Ethridge arrived at the restaurant while lunch was still being served, which was between 11:30 A.M. and 12:30 P.M. This purported inconsistent statement by Ethridge never came before the jury.
The petitioner also contends that Peters ought to have moved for a mistrial based on the trial court's lack of impartiality. This contention is largely grounded on the petitioner's claim that the trial court rebuked a defense witness, Larry Bials (Petitioner's Exhibit 1, March 13, 1991, p. 101). The petitioner asserts that the jury, which had been excused from the courtroom earlier, may have overheard the trial court's remarks to Bials and that those remarks intimidated Bials reducing his effectiveness as a credible, alibi witness in the jury's eyes.
To evaluate the impact these claimed omissions had on the outcome of the criminal trial, an elaboration of other evidence adduced at the criminal trial is necessary. The alleged victim of the attempted, sexual assault testified at that trial (Petitioner's Exhibit 1, March 8, 1991, pp. 20 through 103). She related that she, while attending college, shared an apartment with Tonya Pierre, Christopher Gates, Heidi Snyder, and Garret Duckler. Eventually, Snyder moved out, and the petitioner, responding to a newspaper ad, took his place. She recounted that one day, around noon, she had just awakened when the defendant, who had been drinking, entered her bedroom. After a short discussion regarding CT Page 12399 the petitioner's delinquency in contributing to the rent, the petitioner tore back the covers to the victim's bed while she still lay in it. He then forced himself on top of her. Despite the victim's physical struggle to separate from him, the petitioner was able to pin the victim to the bed, fondle her breasts and genitals, and attempt to remove her nightclothes. The victim screamed for help.
Pierre, who had just returned home heard the victim's cries, shouted at the petitioner, and ran to her own bedroom to call for assistance. Pierre also testified at the petitioner's criminal trial (Petitioner's Exhibit 1, March 8, 1991, pp. 104 through 132). The testimony of both the victim and Pierre indicated that when Pierre attempted to phone for help the petitioner assaulted her and prevented her from completing the phone call. Both Pierre and the victim recounted that they were able, jointly, to convince the petitioner to leave the residence.
A Middletown police officer, Paul Mangini, testified at the criminal trial (Petitioner's Exhibit 1, March 8, 1991, pp. 133 through 162). He recollected that he arrived at the scene shortly after the incident and observed bruises on the victim consistent with the struggle she had described.
Using information obtained by Mangini, another Middletown officer, Emanuel Sbona, sought, located, and arrested the petitioner at around 3 P.M. that afternoon. Sbona testified at the criminal trial, also (Petitioner's Exhibit 1, March 12, 1991, pp. 3 through 22). He related that when he encountered the petitioner, it was obvious that the petitioner had been drinking and that the petitioner had scratchmarks on his neck (Petitioner's Exhibit 1, March 12, 1991, pp. 12 and 13).
At the criminal trial the defense was alibi and revenge for the petitioner's inability to pay his share of the rent. The defense presented several witnesses who stated they were at a restaurant with the petitioner around the time the assaults were, allegedly occurring. Given this state of the evidence, Ethridge's previous, inconsistent statement appears insignificant. Ethridge testified at the criminal trial that the petitioner was already present in the restaurant when Ethridge arrived. Other defense witnesses said they saw the petitioner in the restaurant earlier than Ethridge had. The most likely result of Peters' introducing evidence of Ethridge's inconsistent versions would have been to undermine the credibility or reliability of his own witness. CT Page 12400
Turning to the admonition of Bials, the jury was absent when the colloquy between the trial judge and Bials occurred. Peters testified at the habeas hearing that the judge's voice was loud enough that it was possible that the jury overheard the judge chastise Bials. This possibility remains pure speculation. Additionally, the court has reviewed the content of the trial judge's comments to Bials and finds the comments to be firm but fair.
Even had the jury overheard the exchange, the trial judge gave specific instructions to the jury that his comments and tone of voice during the trial must not be interpreted by the jury to indicate any opinion on the judge's part (Petitioner's Exhibit 1, March 8, 1991, pp. 10 and 11). At the end of the trial, the judge reiterated these detailed instructions, cautioning the jurors to refrain from inferring the judge's sentiments or opinions from his conduct or voice (Petitioner's Exhibit), March 14, 1991, p. 3).
The court has carefully reviewed the record of the criminal trial and finds no support therein for the petitioner's claim that the trial judge acted unimpartially. The court concludes that a motion for mistrial on such a basis would have been unwarranted and properly denied. The court also finds that the evidence of the petitioner's guilt was overwhelming. The court determines that the petitioner has failed to demonstrate that there exists a reasonable probability that, but for his trial attorney's representation, the outcome of his criminal trial would have been different.
 II
The petitioner also contends that his appellate attorney was ineffective by failing to raise the trial court's lack of impartiality on appeal, as well as his failure to argue that certain jury instructions violated state constitutional provisions. Again assuming, arguendo, that appellate counsel was deficient in failing to raise these appellate issues, the petitioner must prove that these purported deficiencies prejudiced him.
In Bunkley v. Commissioner, 222 Conn. 444 (1992), our Supreme Court held that the proper measure of the prejudice component of the Strickland standard, where the ineffective assistance of appellate counsel is claimed, is not merely whether there exists a reasonable probability that, but for appellate counsel's errors, the outcome of the appeal would have been different, but also that CT Page 12401 the outcome of the criminal trial itself, ultimately, would have been different; in other words, confidence in the verdict is undermined because of appellate counsel's errors, Id., 459.
 A.
Addressing the petitioner's contention regarding failure to raise a lack of impartial forum on appeal, the court notes that Ude testified at the habeas hearing. He stated that the purported lack of impartiality by the trial judge is unapparent when reviewing a transcript of the trial proceedings. The court agrees with Ude's observation, and rejects the opposite conclusion suggested by the petitioner's expert witness, Attorney Arthur Meisler. A review of the written record of the criminal trial by the habeas court discloses no discernible loss of impartiality by the trial judge. An appellate tribunal would likewise have no basis for a determination of partiality because the claim is undisclosed by an examination of the record, State v. Mason, 186 Conn. 574, 579
(1982).
 B.
With respect to the petitioner's contention that Ude ought to have argued that the jury instructions were violations of the state constitution, the court observes that this issue was raised by Ude in the direct appeal, State v. Milardo, supra. Our Supreme Court rejected similar arguments, with respect to the Federal constitution, Id. The Supreme Court never decided the state constitutional violation claims because Ude never independently analyzed or briefed these claims, Id., n. 9.
Ude testified at the habeas hearing that he declined to argue and brief this issue because his research uncovered no cases distinguishing the comparable state and federal provisions as bearing on the jury instructions in question. Ude opined that the outcome of the appeal would have been identical whether one labelled the violations either state or federal constitutional deprivations. This testimony was uncontradicted, and the court concurs in Ude's opinion. Our Supreme Court held the jury instructions to be constitutional. It is extremely unlikely that this holding would have been altered but for Ude's decision to pursue no independent state constitutional analysis. It is significant that the petitioner's habeas counsel made no argument in support of this claim in the petitioner's posttrial brief. CT Page 12402
For these reasons, the petition is dismissed.
Sferrazza, J.