MEMORANDUM OF DECISION RE MOTION FOR JUDGMENT OF ACQUITTAL
I — History of the Case.
CT Page 2053
The defendant was charged in a ten-count amended information[1] with two counts of sexual assault in the first degree [Sec. 53a-70(a)(2), Conn. Gen. Stat.], three counts of sexual assault in the fourth degree [Sec. 53a-73a(a)(1)(A)], and five counts of risk of injury to a minor (Sec. 53-21)[2]. The crimes charged were alleged to have occurred on various dates between March and December 1991. The named victims were the defendant's two minor children, J (date of birth: 10-15-87), andM (date of birth: 8-17-85).
Trial began with the taking of evidence on January 30, 1995. The presentation of evidence by both sides consumed about twelve trial days. Following arguments and the court's charge, the jury commenced its deliberations on February 16.
After deliberating for about 7 1/2 hours over parts of three days, the jury reported that it had reached a verdict as to six counts but could not unanimously agree on the remaining four counts of the information. The court requested the jury to continue its deliberations with regard to the open counts. After four hours of further deliberation, the jury reported its continuing inability to agree. At this juncture the court delivered the so-called Chip Smith instruction. State v. Smith,49 Conn. 376, 386 (1881); See Allen v. United States, 164 U.S. 492
(1896).
Following the above instruction the jury deliberated for an additional 2 1/2 hours before reporting a continuing impasse. The court then accepted the jury's verdict as follows:
 Not guilty as to the first four counts of the information charging sexual assault in the first degree, sexual assault in the fourth degree, and risk of injury to a minor (two counts), all as to J; and not guilty as to the fifth and sixth counts charging sexual assault in the first degree and risk of injury to a minor, both counts as to M.
The jury reported its inability to agree on a verdict as to counts seven through ten, which, as to the alleged victimM, charged sexual assault in the fourth degree (two counts) and risk of injury to a minor (two counts). Following discharge of CT Page 2054 the jury, the court declared a mistrial as to these counts. P.B., Sec. 889. Thereafter, the defendant filed a timely motion for a judgment of acquittal as to counts seven through ten. P.B., Sec. 897, et seq.
In ruling upon a motion for judgment of acquittal following a mistrial the court must determine whether the evidence, as to those counts of the information which were mistried, will not reasonably permit a finding of guilt beyond a reasonable doubt. P.B., Sec. 898.
II — Evidence Received at Trial.
A. The named child-victim M is learning disabled and was five or six years old during the period when the crimes charged were allegedly committed. Apart from testimony of the child presented to the jury by videotape; Sec. 54-86g(a), Conn. Gen. Stat.; and testimony of certain witnesses called by the State and received under the constancy of accusation exception to the hearsay rule; State v. Dabkowski, 199 Conn. 193, 199-200
(1986); there is no direct and credible evidence that the crimes alleged were committed.
B. The principal complaining witness for the State (exclusive of the named child-victims) was W(1), mother of M andJ, and former wife of the defendant. The couple, after about eight years of marriage, separated in July 1990. W(1) instituted dissolution proceedings in November, and the marriage was dissolved in April 1991.
The defendant met his current wife, W(2), in the early fall of 1991, and before the end of the year their relationship had become serious[3]. It was at about this time, on December 20, 1991, that W(1) accused the defendant of being responsible for "something funny going on here." She told the defendant she was taking the children to the Kaiser-Permanente Health Group to find out what it was.
W(1), who testified at trial and was present during a major part of the proceedings, including the period of deliberations, brought her complaint regarding the defendant to the attention of Meriden police in early 1992. On February 6, she took M and J to Police Headquarters where the children were interviewed by Detective Gary Brandl. Within a few days following the interviews an arrest warrant was issued, and the CT Page 2055 defendant was charged with a variety of crimes of sexual misconduct with his children. At no time prior to his arrest did Detective Brandl or any other officer attempt to discuss with the defendant the nature of W(1)'s complaint or the results of his interviews of the children.
C. The defendant testified at trial and unequivocally denied any inappropriate, let alone criminal, behavior with his children. He professed to have a loving relationship with them, and insisted that visitation, before suspension following his arrest, was a source of mutual happiness for him and both children. The defendant's wife, W(2), and her parents also testified as to their observations of the close personal relationship which existed between the defendant and his two sons.
D. For a number of months following his arrest, the defendant, on the advice of counsel, sought diligently to arrange a forensic evaluation of himself, his former wife, and their children. The evaluation was to be conducted by Dr. James Black, a child and adolescent psychiatrist, who maintained a private practice in West Hartford. Its purpose was to ascertain the existence of any sexual dysfunction within the family and, if present, to diagnose the root cause thereof. Despite the defendant's efforts and willingness to assume the attendant cost,W(1) resisted and refused to participate in any such evaluation. Instead, she relied on advice and help received from Diane Myers, a clinician with Kaiser-Permanente, and Sally Tomzak, a clinical services employee of the Meriden Child Guidance Clinic. Both persons had contact with the children and W(1) over an extended period and essentially no contact with the defendant. Both testified at trial and were supportive of W(1)'s complaint.
III — Evaluation of the Evidence.
The above recital does not incorporate all of the evidence presented at trial. Rather, it is intended as a precis of evidence, together with inferences that may be drawn therefrom, which, as a matter of law, impacts seriously on the ability of any jury to find evidence sufficient to establish guilt beyond a reasonable doubt as to counts seven through ten of the information.
A. The evidence disclosed a motivation for contrivance on the part of W(1), the moving force in the complaint against CT Page 2056 the defendant, which is founded on more than mere speculation. She was a participant in a failed marriage, physically separated from her husband, with little recourse but divorce court. Not long after legal termination of the marriage, the defendant developed a close personal relationship with W(2), toward whom the children of the marriage developed a fondness. By December 1991 contacts between the defendant and W(1) were becoming more and more volatile, and it is more than coincidence that W(1) at about this time began to advance to others her theories regarding the defendant's misconduct.
B. W(1)'s staunch resistance to participation in a forensic evaluation by Dr. Black or any competent professional is most troubling. Such evaluation would certainly have assisted in analyzing the validity of the complaints that were made. W(1),
if she truly believed that the defendant was sexually abusing her children, had nothing to fear by cooperating, and, it would seem, should have welcomed the evaluation. Her refusal to take part is, to say the least, rather suspect.
C. The testimony of M as to the alleged sexual acts of misconduct is distressing. Although he was statutorily competent to testify; Sec. 54-86h, Conn. Gen. Stat.; his credibility, however, was "a matter to be resolved solely by the jury." Statev. Hart, 198 Conn. 424, 427 (1986). Clearly, the child's inconsistencies in relating to others the purported abuse undermined his credibility. By the same token, the factor of adult influence by the custodial parent was not, under the circumstances of the case, a matter which the trier was likely to have ignored. The propensity of children of tender age, such asM and J, to be amenable to the influence of adult relatives is not unrecognized in the law. State v. James, 211 Conn. 555, 569
n. 7 (1989); Wilhelm v. Czuczka, 19 Conn. App. 36, 38-39 (1989).
D. As to the two open counts of sexual assault in the fourth degree, the defendant argues that the State failed completely to offer any evidence in support of an essential element of the crime; i.e., that such contact was "for the purpose of sexual gratification of the [defendant]." Sec. 53a-65(3), Conn. Gen. Stat. The defendant's claim is not unfounded. The record is devoid of any direct evidence; cf. State v.Sirimanochank, 31 Conn. App. 452, 454 (1993); State v. Eric T.,8 Conn. App. 607, 614 (1986); and the argument that the jury was required to determine this element of the crime on the basis of speculation is not a frivolous one. CT Page 2057
Accepting, however, for the sake of addressing the above issue that statutorily defined sexual contact did occur, a matter which the defendant steadfastly denied, the court does not find that the jury would be compelled to rely on speculation to conclude that the element of sexual gratification was established. "If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." State v. Milardo, 224 Conn. 397, 403 (1993). On this premise there is a basis, albeit a very thin one, for concluding that the element of sexual gratification was established.
E. What is significant, in the view of the court, as to each of the undecided counts is the diminished credibility of the two child-victims. Each was of a very young age at the time of the alleged acts, which were committed, as alleged, at least three years, and perhaps closer to four years, prior to the taking of their testimony. The testimony of J, whom the State also offered to a limited degree as a witness to alleged acts involving his brother, was by its verdict rejected by the jury as to all counts in which J was a named victim.
That the defendant performed an act of fellatio on his son M, as M testified, and that there was any moral impairment ofM's well-being as a result of whatever occurred, all as described in the fifth and sixth counts of the information, were contentions of the State also rejected by the jury. The inescapable conclusion is that M's testimony as to these charges was not deemed credible.
On the basis of the above, it is reasonable to assume that the jury's inability unanimously to agree as to the remaining counts was due in large measure to the questionable credibility of the testimonial evidence of a 9-year-old childEnlund v. Buske, 160 Conn. 327, 333 (1971). That evidence and what little J disclosed was the only direct evidence that the crimes charged were committed, a fact which further demonstrates the weakness of the State's present posture.
IV — Conclusion and Ruling.
CT Page 2058
That "a trial judge [may] order an acquittal based on the insufficiency of the evidence after a deadlocked jury has been discharged states a valid legal concept." People ex rel.Dailey v. Crilly, 483 N.E.2d 1236, 1240 (Ill. 1985). As the United States Supreme Court said:
 "[I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. . . The trial judge is thereby barred from attempting to override or interfere with the juror's independent judgment in a manner contrary to the interests of the accused. Such a limitation on the role of a trial judge, however, has never inhibited his ruling in favor of a criminal defendant."
 United States v. Martin Linen Supply Company, 430 U.S. 564, 572-73 (1977).
This court is not unmindful that "a refusal of a jury to convict does not necessarily mean that the evidence was insufficient to convict as a matter of law." State v. Seravalli,189 Conn. 210, 209 n. 8 (1983). As to the instant case, however, the court finds that the cumulative effect of the evidence, including inferences reasonably drawn therefrom, fails legally to rise to a level which would reasonably permit a trier to make a finding of guilt beyond a reasonable doubt. State v. Avis,209 Conn. 290, 309 (1988).
Accordingly, the motion for judgment of acquittal as to the crimes charged in counts seven through ten, and any lesser included offenses, is granted.
Gaffney, J.