STATE OF CONNECTICUT *v.* ANTHONY CARTER
(AC 23614)

Dranginis, DiPentima and Peters, Js.

Argued March 23—officially released August 3, 2004

*Mark Rademacher*, assistant public defender, with whom, on the brief, was *Anthony Carter*, pro se, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. This case arises from the terrible consequences of a drug turf war. During a Fourth of July block party in the area of Enfield and Garden Streets in Hartford, a seven year old girl was struck by a stray bullet that caused serious injuries. After a jury trial, the defendant, Anthony Carter, was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (5), risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). He appeals from the judgment of conviction, raising nine issues for review.[1] He claims that the trial court improperly (1) applied the doctrine of transferred intent in that the defendant was unaware of the presence of the victim, (2) rendered judgment when there was insufficient evidence to convict him of assault and risk of injury to a child because the state failed to prove that he shot the victim, (3) violated his due process rights in instructing the jury on a theory of transferred intent that was not charged by the state in the information and when the evidence on the charged

---

[1] The defendant's attorney raises six issues in his portion of the brief to this court, and the defendant himself raises an additional three issues in his reply brief.

theory was insufficient, (4) regarding the count of risk of injury to a child, failed to tell the jury that his conduct must have been wilful and deliberate, and the proximate cause of the victim's injuries, (5) rendered judgment despite insufficient evidence to support the conviction for risk of injury to a child, (6) admitted evidence of prior misconduct to prove motive because the prejudicial impact of that evidence exceeded its probative value, (7) denied his motion for a judgment of acquittal after the verdict, (8) instructed the jury regarding the firearm element in counts one, two and four of the information because the court used language different from the statutory language and (9) convicted him of risk of injury to a child when the information charged none of the facts necessary to constitute the crime charged.

The jury reasonably could have found the following facts. In the early part of July, 2001, the defendant and Maurice Miller became involved in a dispute over the sale of marijuana in a particular area of Hartford. On July 1, 2001, the defendant telephoned Miller and told him that he could either engage the defendant in a fair fistfight or the defendant would shoot him on sight. In response, Miller armed himself with a Glock handgun.

On the evening of July 4, 2001, Miller and another man called "Shorty" were standing by the side of a building in or near an alleyway on Enfield Street. The defendant arrived in a rented red Chevrolet Blazer (Blazer), exited the vehicle and then chased Miller along the alleyway while shooting at him. Miller saw a handgun in the defendant's hand and noticed the muzzle flash. A bullet fired from the defendant's gun struck and injured the victim, who was standing about one block away near a vehicle listening to music. After the defendant stopped shooting, Miller turned around and began chasing him. Miller fired his weapon repeatedly at the defendant until the defendant reentered the red

Blazer. Miller fired the weapon again as the defendant drove away in the red Blazer.

The police arrived on the scene shortly after 6:45 p.m. They discovered eight .45 caliber shell casings. Forensic analysis led to the conclusion that all eight had been fired from the same handgun. The officers also discovered five nine millimeter Luger shell casings and one nine millimeter Luger metal jacket bullet. Later forensic analysis established that all of the nine millimeter casings had been fired from the same handgun.

On July 5, 2001, the defendant informed the Manchester police about a hole in his rented Blazer. Through a forensic examination, the hole was identified as a bullet hole. The defendant did not inform the police officer of the gunfight but implied that the damage might have been caused by fireworks.

While incarcerated in September, 2001, the defendant told William Brunson, his cell mate, about his dispute with Miller and the events of July 4, 2001. He also admitted that a bullet fired from his gun struck the victim. Additional relevant facts will be set forth as necessary.

I

The defendant first claims that the court improperly applied the doctrine of transferred intent to the facts when instructing the jury. In particular, the defendant argues that in Connecticut transferred intent has been applied only to situations in which the defendant was aware of the presence of the victim and accidentally shot the victim and that the doctrine should not be expanded to encompass situations such as this, in which the defendant was unaware of the presence of the victim. We disagree with the defendant.

The defendant concedes that his claim is unpreserved and therefore requests review pursuant to *State* v. *Gold-*

*ing*, 213 Conn. 233, 239–40, 567 A.2d 823 (1988). We review the defendant's claim, as the record is adequate for review, and the claim implicates an essential element of the charged offense, the defendant's intent. See *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). Indeed, the state does not contest that the first two prongs of the four part *Golding* test have been met. Because we conclude, however, that the court's instruction was proper, the defendant's claim fails under the third prong of *Golding* because the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.[2]

Because the claim requires us to interpret § 53a-59 (a) (5), our review is plenary. See *State* v. *Higgins*, 265 Conn. 35, 43, 826 A.2d 1126 (2003). Section 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person *or to a third person* by means of the discharge of a firearm." (Emphasis added.)

In interpreting statutes, we may look to other similar statutes for guidance. See *In re Ralph M.*, 211 Conn. 289, 306, 559 A.2d 179 (1989) (when statute with reference to one subject contains provision, omission of such provision from similar statute concerning related subject is significant to show that different intention existed); see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988). In this case, we turn to our murder statute, General Statutes § 53a-54a (a)[3], which

---

[2] As to count one of the information, the jury was instructed that the defendant could be found guilty of assault in the first degree if it found that "the defendant intended to cause injury to another person, that would be Maurice Miller, [and] that acting with that intent, he, the defendant, in fact caused physical injury to a third person, [the victim], a person under ten years of age; and . . . that he caused that injury by means of the discharge of a firearm."

[3] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

contains language virtually identical to the statute in question. By its plain language, our murder statute "specifically provide[s] for intent to be transferred from the target of the defendant's conduct to an unintended victim." *State* v. *Hinton*, supra, 227 Conn. 316. Because the statutes are virtually identical, we conclude that by its plain language, the assault statute also provides for intent to be transferred. See Public Acts 2003, No. 03-154, § 1. Moreover, the plain language does not contain any requirement that the defendant be aware of the presence of the unintended victim. It is not the function of this court to enhance or to supplement a statute containing clearly expressed language. See *State* v. *Leary*, 217 Conn. 404, 415, 587 A.2d 85 (1991). If the legislature's intent was to limit the transferred intent doctrine to known victims, it would have expressly stated as much. See *State* v. *Aparo*, 223 Conn. 384, 388, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993).

Furthermore, the defendant is unable to cite any case law for the proposition that he must be aware of the victim's presence. Our search for the same has not disclosed any Connecticut precedent. In turning to other jurisdictions for guidance, we consider *State* v. *Mullins*, 76 Ohio App. 3d 633, 602 N.E.2d 769 (1992). In *Mullins*, a factually similar case, a ten year old boy, unknown to the defendant, playing on the street in front of his parents' business, was struck and killed by a stray bullet. Id., 634. The defendant was charged with having fired the fatal shot while he was shooting at third parties in a car more than one city block away. Id. In affirming the conviction, the Ohio Court of Appeals stated that regarding the application of the doctrine of transferred intent, "the proximity of the victim and the knowledge of the perpetrator about the ultimate victim are immaterial." Id., 636. We agree with the Ohio court.

Our review of the plain language of our statute and the persuasive reasoning of the *Mullins* case leads us to conclude that the trial court correctly instructed the jury to apply the doctrine of transferred intent to the facts of this case. As a consequence, the defendant's argument fails.

## II

The defendant next claims that there was insufficient evidence to convict him of assault in the first degree and risk of injury to a child. Specifically, the defendant argues that the state failed to prove that he, and not Miller, shot the victim. We are not persuaded.

Claims of insufficient evidence to support a criminal conviction are reviewed within a well established two part framework. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 616, 682 A.2d 972 (1996).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997).

Guided by those principles, we conclude that there was sufficient evidence to support the conviction of assault in the first degree and risk of injury to a child. When she was struck by the bullet, the victim was standing on a sidewalk on Garden Street, approximately 350 feet away from the area where the gunfight occurred. There was testimony from Miller about the circumstances surrounding the shooting. He testified that the defendant arrived in his car, exited the vehicle and started shooting at him. He further testified that "I started running toward—you know, in this direction, *toward Garden Street.*" (Emphasis added.) Miller stated that there was a gun in the defendant's hand and that he saw the muzzle flash. Miller's testimony was corroborated by the testimony of Maurice Bennefield. Bennefield testified that when the defendant exited the vehicle and began shooting at Miller, that Miller "ran toward that little girl that got shot at, like toward Garden Street." Moreover, a diagram that was admitted into evidence as a full exhibit showed the path of "the stray bullet that's coming from [the defendant's] gun" to "the little girl." The diagram was a copy of a diagram that originally was drawn by the defendant for his one time cell mate, Brunson. In light of that evidence, we conclude that the jury's verdict was reasonably supported by the evidence. As a consequence, the defendant's argument fails.

### III

The defendant next claims that the court unconstitutionally deprived him of notice and improperly enlarged

the offense with which he was charged when it instructed the jury that it could convict him of the shooting of the victim if it found that he had intended to cause physical injury to Miller, the person at whom he was allegedly shooting. The defendant claims that the court's instruction effectively permitted the jury to convict him on the basis of an uncharged theory of liability, transferred intent, violating his rights under the sixth amendment to the United States constitution and under article first, § 8, of the Connecticut constitution. Distilled to its essence, the defendant's argument is lack of notice causing him unfair surprise and prejudice in the preparation of his defense. We disagree with the defendant.

The defendant concedes that he did not take exception to the charge or raise those claims at trial. Therefore, he requests review under *Golding*. We review the claim because the record is adequate, and the issue is of constitutional magnitude. See *State* v. *Belton*, 190 Conn. 496, 500–505, 461 A.2d 973 (1983).

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee that a criminal defendant has the right to be informed of the nature and the cause of the charge or charges brought against him with sufficient precision to enable him to meet them at trial. . . . If the information was sufficient to allow the defendant to prepare his defense, to avoid prejudicial surprise, and to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, then it has fulfilled its constitutional purpose. . . .

"In Connecticut, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defen-

dant committed the offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Walton*, 34 Conn. App. 223, 226–27, 641 A.2d 391, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994). "Where the defendant can demonstrate neither unfair surprise nor prejudice, he cannot claim an infringement of his constitutional right to fair notice of the crimes with which he is charged . . . ." *State* v. *Milardo*, 224 Conn. 397, 414, 618 A.2d 1347 (1993).

The information specifically set out the statutory name of the crime and the specific statute under which the defendant was charged. The information specifically stated that "with intent to cause physical injury to another person, the accused caused said injury to [the victim] . . . by means of the discharge of a firearm." The court read the charge and the entire assault statute, § 53a-59 (a) (5), to the jury. The court went on to state that the jury could convict the defendant of assaulting the victim if "the defendant intend[ed] to cause physical injury to the person at whom he was allegedly shooting, that is, Maurice Miller . . . ."

We conclude that count one, which provides a statutory citation, the name, place and time of the crime, and the general nature of the criminal act, was adequate to enable the defendant to prepare a defense, to avoid surprise and to raise the disposition as a bar to further prosecution. See *State* v. *Spigarolo*, 210 Conn. 359, 382–85, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

Even if we assume arguendo that the language of count one is ambiguous as to the element of intent, we cannot say that, construed liberally, the information fails to charge the intent element of assault in the first degree. The defendant's argument is essentially a claim that the information was unskillfully or imprecisely drafted. He cannot prevail on that claim because the

amended information did not completely fail to aver the theory of transferred intent. See *State* v. *McMurray*, 217 Conn. 243, 253–54, 585 A.2d 677 (1991). The *McMurray* court, in an analogous situation, opined that "[t]he tenuousness of the defendant's claim that his interpretation is the *only* reasonable one is highlighted by the failure of either the defendant or the trial court to raise this issue at any point during the trial." (Emphasis in original.) Id., 251–52. The defendant's claim fails.

IV

The defendant next claims that the court improperly instructed the jury on the count of risk of injury to a child. In particular, the defendant argues that the court failed to inform the jury that his behavior must have been wilful and deliberate to be the proximate cause of the victim's injury. We disagree with the defendant.

The defendant concedes that the issue was not preserved and is reviewable only under the familiar four prongs of *Golding*. We review the defendant's claim because the record is adequate for review, and the claim is of constitutional magnitude. See *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995) (failure to instruct jury on elements of offense or to correctly instruct on element of offense is constitutional error). The defendant's claim fails to satisfy *Golding*'s third prong, as we conclude that the instruction was proper.

We begin our analysis with the well settled standard of review of claims of instructional impropriety. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that

injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 509–10, 828 A.2d 1248 (2003).

In the information, the defendant was charged under the "any act" portion of § 53-21 (a) (1)[4] in that he "discharged a firearm and thereby impaired the health of [the victim], a child under sixteen years of age." The court instructed the jury that "to find the defendant guilty of this charge, the state must prove" inter alia, "that the defendant did an act which was likely to impair the health of the child; and . . . that the defendant had the general intent to perform that act."

The defendant misperceives the nature of the intent required to convict him of doing an act likely to impair the health of a child, the provision of § 53-21 under which he was found guilty. All that is necessary is the general intent to perform the act that resulted in the injury. *State* v. *McClary*, 207 Conn. 233, 240, 541 A.2d 96 (1988). It is not necessary that the court instruct the jury that there must be evidence that the defendant intended to harm the victim or knew that she was in the area and would likely be injured by a stray bullet.

Moreover, regardless of whether the defendant knew that the victim was standing approximately 350 feet away, the jury reasonably could have found the defendant guilty on the basis of his reckless disregard of the

---

[4] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does *any act* likely to impair the health or morals of any such child . . . shall be guilty of a class C felony for a violation of subdivision (1) . . . ." (Emphasis added.)

consequences of his actions. "It is not necessary, to support a conviction under § 53-21, that the defendant be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute. *Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to find a violation of the statute.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Davila*, 75 Conn. App. 432, 438, 816 A.2d 673, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003). We conclude that the court's instruction was proper and, as a consequence, the defendant's argument fails.

V

The defendant next claims that the state failed to produce sufficient evidence to support the conviction of risk of injury to a child. Specifically, the defendant argues that the state failed to prove that he acted wilfully or deliberately or that he perpetrated blatant physical abuse on the victim. Our standard of review of sufficiency of the evidence claims is well settled and was set out adequately in part II.

The defendant relies on *State* v. *Schriver*, 207 Conn. 456, 466, 542 A.2d 686 (1988), for the proposition that for his act to amount to blatant physical abuse perpetrated directly on the body of the victim, he must have known or should have known of the victim's presence. The defendant's reliance is misplaced. In *Schriver*, the court held that conduct likely to impair solely the mental health of the child was not prohibited by § 53-21. That holding clearly does not apply to the facts of this case. Further, the *Schriver* court did not discuss whether a defendant knew or should have known that a victim was present in order for his conduct to be a deliberate, blatant abuse. As noted in part IV, the "any act" portion of § 53-21 (a) (1) is a general intent statute. "It was not

necessary for a conviction under that provision for the trial court to find any intent to injure the child or impair [the child's] health. All that was required was the general intent on the part of the defendant to perform the act which resulted in the injury, that is, that the bodily movement which resulted in the injury was volitional." *State* v. *McClary*, 207 Conn. 240.

In this case, there was testimony that the defendant discharged a firearm numerous times while pursuing Miller toward Garden Street in a high density urban neighborhood during a summer holiday. That certainly falls within the broad class of intentional conduct that can, and, in this case, did put a child's well-being seriously at risk. Construing the facts in a light most favorable to sustaining the conviction, we conclude that there was sufficient evidence to support the jury's verdict. Consequently, the defendant's claim fails.

## VI

The defendant next claims that the court improperly admitted evidence of prior misconduct because the probative value of that evidence was outweighed by its prejudicial effect. In particular, he claims that the probative value was weak and that the court gave no limiting instruction. The defendant has failed to persuade us.

Here, the court allowed testimony of the defendant's alleged marijuana selling operation and his dispute with Miller over Miller's encroachment into the defendant's territory. Miller testified that during the prior year, he had sold marijuana on Mansfield Street and that he and the defendant had argued about Miller's sale of drugs in that area. The dispute escalated into two separate instances involving the use of firearms. The second incident ended with the shooting of the victim. The court allowed the evidence, concluding that it pertained to the defendant's motive and that it was more probative than prejudicial.

Our Supreme Court recently stated that "[a]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . We have recognized exceptions to this general rule, however. Evidence of prior misconduct may be admissible . . . for other purposes, such as to prove knowledge, intent, motive, and common scheme or design . . . . Accordingly, we have established a two-pronged test for determining the admissibility of prior misconduct evidence. Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004).

"One exception to the general rule of inadmissibility of other misconduct evidence is that such evidence is admissible to prove motive. [T]here are two components to relevant evidence: materiality and probative value. . . . [E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . *Evidence of motive is a highly relevant factor for assessing the guilt or innocence of a defendant.* . . . [E]vidence otherwise relevant and material is not rendered inadmissible because it tends to prove that an accused committed other crimes. . . . Motive is a fact which may be inferred from circumstances; hence the circumstances from which it may be inferred are relevant." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Faria*, 47 Conn. App. 159, 169, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable

presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Camera*, 81 Conn. App. 175, 183, 839 A.2d 613, cert. denied, 268 Conn. 910, 845 A.2d 412 (2004).

The challenged evidence was relevant to prove the defendant's motive. The evidence of the relationship between the parties and the criminal activity in which the defendant was engaged tended to establish that he had a reason to be involved in the shooting on July 4, 2001. The court properly conducted the requisite balancing test before it ruled that the challenged evidence was more probative than prejudicial. Finally, regarding the defendant's claim that the court failed to give a limiting instruction, the defendant fails to cite any authority in support of his proposition that the court, sua sponte, must give a limiting instruction under the circumstances of this case. In Connecticut, the court generally is not obligated, sua sponte, to give a limiting instruction. *State* v. *Cator*, 256 Conn. 785, 801, 781 A.2d 285 (2001).

Making every reasonable presumption in favor of the court's ruling, we cannot conclude that the court abused its discretion by admitting the challenged evidence.

## VII

The defendant next claims that the court improperly denied his motion for a judgment of acquittal after the verdict. In particular, the defendant argues that the pleadings with respect to counts one, two and four failed to allege, and the evidence failed to prove, the use of a firearm.[5]

We begin by setting forth our standard of review. "[T]he standard of appellate review of a denial of a

---

[5] As to the claim of defective pleadings, we are not persuaded. We have reviewed counts two and four of the information and, in fact, the use of a firearm is alleged. Thus, we address only the claim of insufficiency of the evidence.

motion for a judgment of acquittal [challenging the sufficiency of the evidence] has been settled by judicial decision." (Internal quotation marks omitted.) *State* v. *Jackson*, 75 Conn. App. 578, 584, 816 A.2d 742 (2003). "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

At trial, there was testimony from a number of sources that the victim was shot through the face. Numerous shell casings were recovered at the scene of the gunfight. Brunson testified that the defendant had admitted to him that he had shot at Miller and that a bullet the defendant had fired hit the victim. Miller testified that he and the defendant exchanged gunfire and that he saw a gun in the defendant's hand and saw its muzzle flash. There was testimony that the defendant was running toward the victim's location while he was firing his weapon. Finally, there was testimony that the defendant had exited his vehicle and fired a weapon.

Construing all of the evidence in a light most favorable to sustaining the verdict, we conclude that the jury could have reasonably concluded that the defendant was guilty beyond a reasonable doubt.

### VIII

The defendant next claims that the court improperly instructed the jury as to the definition of the term firearm. Specifically, he argues that it is reasonably probable that the jury was misled by the court's definition of the essential element, firearm, in counts one, two and four. We are not persuaded.

The standard of review for claims of instructional impropriety was set forth in part II. The defendant concedes that his claim is reviewable only under the four familiar prongs of *Golding*. We will review the defendant's claim pursuant to *Golding* because the record is adequate, and an improper instruction on an element of an offense is of constitutional magnitude. See *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). Because we conclude that the instruction was proper, the defendant's claim fails under the third prong of *Golding*.

The court instructed the jury that "[t]he term firearm is defined under our statute as meaning any weapon whether loaded or unloaded from which a shot may be discharged." General Statutes § 53a-3 (19) defines "firearm" as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

The defendant presents neither a factual nor a legal argument in support of his proposition that the jury was misled by the court's charge. Moreover, this court finds no meaningful distinction between the trial court's instruction charging "any weapon" and the language of the statute. See *State* v. *Cotton*, 77 Conn. App. 749, 754, 825 A.2d 189 (jury charge need not be perfect if it is correct in law, sufficient to guide jury), cert. denied, 265 Conn. 911, 831 A.2d 251 (2003). We conclude, therefore, that the instruction was proper, as no reasonable juror would have been misled. As a consequence, the defendant's claim fails.

IX

The defendant's final claim is that count three of the state's information is defective in that it failed to definitely state that the discharging of a firearm was either wilful or that it unlawfully created a situation

inimical to the morals or health of the minor or that the discharge of a firearm was an act directly perpetrated on the person of the minor and injurious to the morals or physical well-being. Although not artfully stated, the defendant's claim is that this deficiency deprived him of the right to notice of the charge against him. We are not persuaded.

Once again, the defendant must seek review under *Golding*, as his claim was unpreserved at trial. We review the defendant's claim, as the record is adequate for review, and the claim is of constitutional magnitude. See *State* v. *Clark*, 69 Conn. App. 41, 46, 794 A.2d 541 (2002). Again, we conclude that the defendant's claim fails to satisfy the third prong of *Golding*. Count three was sufficient to put the defendant on notice of the charge against him.

"The sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . When the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. . . . A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . Further, [w]e have held that [u]nder our practice, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars

more precisely defining the manner in which the defendant committed the offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Spigarolo*, supra, 210 Conn. 381–82.

Count three charged the defendant with injury to a minor in that he "discharged a firearm and thereby impaired the health of [the victim], a child under sixteen years of age." Further, count three enumerated the specific statute, § 53-21 (a) (1), under which the defendant was charged.

Here, the count in question clearly apprised the defendant of the specific statute that he had violated and the nature of the violation. As a consequence, the defendant's final claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.