## STATE OF CONNECTICUT *v.* GERALD LEE KEMLER
### (AC 27344)

Flynn, C. J., and Beach and Robinson, Js.

Argued January 3—officially released March 18, 2008

*Katherine C. Essington,* special public defender, for the appellant (defendant).

*Melissa L. Streeto,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* former state's attorney, and *Cathryn J. Krinitsky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Gerald Lee Kemler, appeals from the judgment of conviction, following a trial by jury, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that the trial court improperly (1) failed to reinstruct the jury regarding the defendant's self-defense theory when the court responded to the jury's request that it explain again what constituted the offenses charged and (2) instructed the jury on the elements of assault in the third degree by giving the jury an instruction on transferred intent and instructing the jury that the defendant could be found guilty if he acted with reckless intent in causing injury to a third person. We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to our resolution of the defendant's claims on appeal. During the afternoon hours of July 16, 2004, thousands of people gathered in the parking lots of the Connecticut Expo Center and the jai alai facility in Hartford while awaiting the start of the Dave Matthews Band concert at the Meadows Music Theater that evening. While awaiting the start of the concert, many people were drinking alcohol, cooking on grills, socializing and playing games. The victim, Andrew Keibel, and his girlfriend, Caitlin Eddy, went to the jai alai parking lot, at approximately 3 p.m.,

to socialize with some friends and to attempt to purchase concert tickets from someone for that night's show. The defendant and his friend, Ryan Arentz, neither of whom knew the victim nor Eddy, also were in the jai alai parking lot, drinking beer and socializing while awaiting the start of the concert. During the afternoon, several fights broke out among the crowd, and the police, dressed in riot gear, attempted to control the crowd and to push everyone out of the parking lot.

One of the arguments that occurred that afternoon was between a young unidentified woman and the defendant's former girlfriend, Christine Dyer. During that argument, Eddy approached the two females in an attempt to get them to quiet down before the police got involved. Eddy and Dyer then got into a verbal altercation, and Dyer walked toward Eddy in an aggressive and confrontational manner. Keibel then stepped between Dyer and Eddy and raised his arms, gesturing for the young women not to fight. Almost immediately thereafter, the defendant rushed toward Keibel and punched him in the face two times. In an attempt to stop the defendant from hitting Keibel, Eddy punched the defendant and tore his shirt, and the defendant pushed her to the ground on top of Keibel, causing her to sustain minor injury. Keibel was taken to a hospital with serious injuries to his cheekbone and right eye socket, which required emergency surgery. A metal plate was inserted into Keibel's head to hold his facial bones in their proper place. The physicians also had to wire shut Keibel's jaw for several weeks.

By way of a long form information, the defendant was charged with assault in the second degree for acts against Keibel, assault in the third degree for acts against Eddy and breach of the peace. The defendant raised two defenses at trial, intoxication and self-defense. After a jury trial, the defendant was convicted of the lesser included offense of assault in the third

degree against Keibel and breach of the peace. The jury found him not guilty of assault in the third degree against Eddy. The court imposed a total effective sentence of one year imprisonment followed by two years probation. This appeal followed.

I

On appeal, the defendant first claims that the court improperly failed to reinstruct the jury regarding his self-defense theory when responding to the jury's request that the court explain again the elements of the offenses charged. The defendant claims that this omission violated his rights under the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. The defendant's claim is not preserved because he failed to take an exception when the court did not reinstruct the jury on the defendant's self-defense theory. Accordingly, he requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] and the plain error doctrine. See Practice Book § 60-5. Although the record is adequate for review, we do not consider this claim to be of constitutional magnitude, and, accordingly, it fails the test of reviewability under *Golding*'s second prong. See *State* v. *Young*, 29 Conn. App. 754, 760–62, 618 A.2d 65 (1992) (claim that court improperly failed to reinstruct jury on theory of self-defense not of constitutional magnitude where no evidence of jury confusion about instruction on self-

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

defense and jury did not request reinstruction on self-defense), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993).[2]

The defendant also seeks review pursuant to the plain error doctrine. Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it

---

[2] In this case, the defendant concedes that the court properly instructed the jury on self-defense numerous times. It is the lack of a reinstruction that he claims was improper, although he did not object or take an exception. We note that, even in cases where this issue has been preserved properly by an objection or an exception, we repeatedly have held that the court has no duty to reinstruct on a theory of self-defense except where there is an indication that the jury is confused on this theory or it has asked for clarification. In *State* v. *Stavrakis*, 88 Conn. App. 371, 387, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005), the court, in response to a question from the jury, reinstructed it on the elements of the charged crimes. The defendant objected to the court's decision not to reinstruct the jury on the theory of self-defense. Id., 387 n.14. We explained, on appeal, that the court had no duty to broaden the scope of the jury's inquiry by reinstructing it on the elements of self-defense when the jury neither requested reinstruction nor expressed confusion about those elements. Id., 387–88; see also *State* v. *Reid*, 22 Conn. App. 321, 324–25, 577 A.2d 1073 (because jury did not ask for reinstruction or evince confusion on elements of self-defense, trial court had no duty to reinstruct on that defense), cert. denied, 216 Conn. 828, 582 A.2d 207 (1990).

has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 86–87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). The defendant, although requesting that we invoke plain error review, has failed to explain why this claim merits such an extraordinary remedy, his brief focusing solely on *Golding* analysis. We therefore decline his invitation to consider plain error.

## II

The defendant next claims that the court improperly instructed the jury on the elements of assault in the third degree by (1) giving the jury an instruction on transferred intent, which (a) improperly allowed the jury to find him guilty of assault in the third degree, as a lesser included offense of assault in the second degree, if it found that he intended to injure Keibel but mistakenly injured Eddy and (b) effectively charged the defendant with a new crime, and (2) by instructing the jury that the defendant could be found guilty if he acted with reckless intent in causing injury to a third person. The claimed instructional impropriety regarding transferred intent was preserved by the defendant when he took an exception to that portion of the charge; the claimed impropriety regarding the court's use of the phrase "reckless intent" was not preserved.

The standard of review for claims of instructional impropriety is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's

charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007). We will consider each of the defendant's claimed improper instructions in turn.

## A

### 1

The defendant claims that the court improperly instructed the jury on the elements of assault in the third degree by giving the jury an instruction on transferred intent. He argues that the court's instruction allowed the jury to find the defendant guilty "with respect to the [lesser] included charge of third degree assault in [c]ount [o]ne, [if] the defendant intended to injure Mr. Keibel, but in fact injured Ms. Eddy by mistake." The defendant further argues: "Although the prosecution did not argue during the trial that the defendant should be convicted based upon transferred intent, there was evidence presented that, in striking Mr. Keibel, the defendant had also pushed Ms. Eddy to the ground, causing her minor injuries. This act was the basis for count two, assault in the third degree with injury to Ms. Eddy." The defendant further argues that "[d]espite his acquittal on count two, given the court's instructions on injury to a third person, it is possible that the jury found the defendant guilty [of] assault in the third degree in count one based upon the injuries allegedly

suffered by Ms. Eddy rather than Mr. Keibel. In other words, the jury could have found that the defendant, with intent to injure Mr. Keibel, mistakenly injured Ms. Eddy." We do not agree.

Count one of the information specifically charged: "The undersigned Senior Assistant State's Attorney accuses the defendant, Gerald Lee Kemler, of the crime of assault in the second degree, in violation of Section 53a-60 (a) (1) of the Connecticut General Statutes and alleges that on or about July 16, 2004 in Hartford, CT., the defendant with intent to cause serious physical injury to another person caused such *injury to Andrew Keibel*." (Emphasis added.) The specific portion of the charge on assault in the third degree to which the defendant objects was as follows: "The law does not require that the person intended to injure the person he in fact injured. The defendant may have intended to injure one person but, by mistake, injured another, in which case, the defendant could be found guilty of this offense." The defendant argues that the jury could have been misled by this charge into thinking that it could find him guilty of the lesser included offense to count one if it found that the defendant intended to injure Keibel but mistakenly injured Eddy. We do not agree.

The court instructed the jury that although the information was not evidence, it was the formal charging document used by the state, and it would be given to the jury for use during deliberations. The court also instructed that the jury must return a separate verdict as to each count contained in the information. It is difficult to comprehend how the jury could have been misled into thinking that it could find the defendant guilty of assault in the third degree, as a lesser included offense to assault in the second degree as charged in count one, if it found that the defendant intended to injure Keibel but mistakenly injured Eddy when the information specifically alleged that the defendant

caused injury to Keibel. The instructions, taken together with the charging document, indicated to the jury that it could find the defendant guilty on count one if it found that the defendant intended to injure Keibel or another person and succeeded in injuring Keibel. There simply is no reasonable reading of the court's charge in combination with the information that would lead one to believe that the jury could find the defendant guilty of assault in the second or third degree for acts against Keibel if it found that the defendant had injured Eddy and not Keibel.

2

The defendant next claims that the court improperly instructed the jury on the elements of assault in the third degree by giving the jury an instruction on transferred intent that effectively amounted to a new charge against the defendant, causing him unfair surprise and prejudice in violation of his rights under the constitution of the United States. He argues that he was "unfairly surprised when, following the court's instructions to the jury at the conclusion of the case, he was effectively charged with a new crime; the crime of assaulting Ms. Eddy while intending to injure Mr. Keibel." For the reasons cited in part I A 1, as well as the reasons we will discuss, we find no merit to this claim.

As this court explained in State v. Carter, 84 Conn. App. 263, 853 A.2d 565, cert. denied, 271 Conn. 932, 859 A.2d 931 (2004), cert. denied, 544 U.S. 1066, 125 S. Ct. 2529, 161 L. Ed. 2d 1120 (2005): "The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee that a criminal defendant has the right to be informed of the nature and the cause of the charge or charges brought against him with sufficient precision to enable him to meet them at trial. . . . If the information was sufficient to

allow the defendant to prepare his defense, to avoid prejudicial surprise, and to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, then it has fulfilled its constitutional purpose. . . . In Connecticut, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense. . . . Where the defendant can demonstrate neither unfair surprise nor prejudice, he cannot claim an infringement of his constitutional right to fair notice of the crimes with which he is charged . . . ." (Citation omitted; internal quotation marks omitted.) Id., 272–73.

We find the analysis in *Carter* to be informative. In *Carter*, the charging document had stated that " 'with intent to cause physical injury *to another person*, the accused caused said injury to [*the victim*] . . . by means of the discharge of a firearm.' " (Emphasis added.) Id., 273. The trial court had read the charge and the assault statute, General Statutes § 53a-59 (a) (5), under which the defendant had been charged, to the jury. The trial court also had instructed the jury that it "could convict the defendant of assaulting the victim [a seven year old girl] if 'the defendant intend[ed] to cause physical injury to the person at whom he was allegedly shooting, that is, Maurice Miller . . . .' " *State* v. *Carter*, supra, 84 Conn. App. 273. In analyzing the defendant's claim that he was not informed that the state would proceed under a theory of transferred intent, we concluded that count one of the information had appraised the defendant adequately of the charge against him by providing a citation to the statutory charge, the name, the place and the time of the crime, and the general nature of the criminal act, thereby enabling him "to prepare a defense, to avoid surprise

and to raise the disposition as a bar to further prosecution." Id. Additionally, we further concluded that "[t]he defendant's argument [was] essentially a claim that the information was unskillfully or imprecisely drafted [and he could not] prevail on that claim because the amended information did not completely fail to aver the theory of transferred intent." Id., 273–74.

We have reached the same conclusion in the present case. The information specifically alleged that the defendant "with intent to cause serious physical injury *to another person* caused such injury to Andrew Keibel."[3] (Emphasis added.) Whether "another person" referred to Keibel or some third person was a matter for trial. The information, however, reasonably could be read to aver a theory of transferred intent. Accordingly, the defendant's claim fails.

### B

The defendant also claims that his due process rights were violated when the court made a reference to "reckless intent" in its main charge on count two, assault in the third degree. He argues that this incorrect instruction diluted the state's burden of proof and that "the jury could reasonably have been confused by the court's instruction and may have believed that 'reckless' rather then 'intentional' conduct was the mental element required for a conviction of third degree assault based upon injury to Ms. Eddy." This claim was not preserved at trial, and, therefore, the defendant requests *Golding* review. We conclude that there exists no clear constitutional violation and, accordingly, that the claim fails under *Golding*'s third prong. See footnote 1.

The trial transcript discloses that during the court's main instruction to the jury on assault in the third

---

[3] We reiterate that the jury had a copy of the information during its deliberations. We also note that at the start of the trial, the clerk read the information to the jury after calling the roll and administering the jury oath.

degree, as alleged in count two of the information, the court stated in relevant part: "The law does not require that the defendant intended to injure the person he, in fact, injured. He may have intended to injure one person but, by mistake, injured another. In which case, the defendant could still be found guilty of this offense as long as he has reckless intent. And again, I went through the issues of intent. It's the same things that we just went through [that] apply to this count." Immediately before giving the jury instruction on count two of the information, however, the court had explained, both accurately and thoroughly, the intent element of assault in the third degree as a lesser included offense of assault in the second degree. The court also stated, when beginning the instruction as to count two, that the intent element was the same as the one just given on the lesser included offense of assault in the third degree in count one. Additionally, in response to two questions from the jury, the court reinstructed the jury on the elements of assault in the third degree and, both times, explained that it was a specific intent crime. "[G]reater weight is likely to have been given by the jury to a later statement than to an earlier one; and this principle operates at times to cure an error in the earlier statement . . . . W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 95, p. 114." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 74 n.8, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

After carefully reviewing the entire charge, we conclude that it is not reasonably possible that the jury was misled by the court's one misstatement. As we have stated, the court thoroughly explained the element of intent to the jury and repeatedly stated that the state had to prove that the defendant had the specific intent to commit the crime. Although the court once stated that the defendant needed a reckless intent, the court also frequently instructed the jury that the defendant's

specific intent was an element of assault in the third degree, and it explained in thorough detail the concept of intent. As our Supreme Court stated in *State* v. *Montanez*, 277 Conn. 735, 894 A.2d 928 (2006): "Indeed, the trial court did so with such repetition, unequivocation and crystalline clarity that [i]t strains reason to believe that the jury could have [interpreted] the challenged instruction as not requiring that the state prove beyond a reasonable doubt that the defendant [possessed the relevant specific intent]." (Internal quotation marks omitted.) Id., 746. Additionally and perhaps equally important, we also are mindful that the defendant was acquitted on count two, assault in the third degree against Eddy. Accordingly, we cannot conclude that there is a reasonable possibility that the court's instructions misled the jury.

The judgment is affirmed.

In this opinion the other judges concurred.